UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHERRI MULLINS,

                Plaintiff,

v.

HEALTHSOURCE SAGINAW, INC.
and BARBARA LOGAN,

                Defendants.
_____/

CASE NO. 16-cv-11283
HON. GEORGE CARAM STEEH

**ORDER GRANTING DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT (Doc. 16)**

Plaintiff Sherri Mullins, a Registered Nurse, retired after sixteen years of employment with defendant Healthsource Saginaw, Inc. ("Healthsource"), a rehabilitation/recovery hospital, after she was allegedly assaulted by a nurses' aide and was dissatisfied with management's response to the incident.  Plaintiff's Complaint alleges retaliation under the Family and Medical Leave Act ("FMLA"),  and pleads four supplemental state law claims.  Having demonstrated that there is no genuine issue of material fact with regard to plaintiff's only federal claim, namely her FMLA retaliation claim, the court shall grant defendants' motion for summary

judgment and shall decline to exercise supplemental jurisdiction over the remaining state law claims.

## I. Factual Background

Mullins began work for HealthSource in 1999 as a billing clerk. (Doc. 16, Ex. 2 at 30).  Around 2004, after receiving the appropriate licensing, Mullins began working as a Registered Nurse for Healthsource. *Id.* at Ex. 3.  In 2011, during her performance evaluation, Mullins stated her intent to retire in about four years.  *Id.*at Ex. 4.  On Friday, May 15, 2015, Mullins alleges she was assaulted by defendant Barbara Logan, a nurse's aide, who is about 6'3" tall and 275 pounds, who allegedly cornered her in a patient's bathroom and would not allow her to leave.  (Doc. 16, Ex. 2 at 82-83, Ex. 6 at 2; Doc. 18, Ex. A).  Mullins alleges Logan grabbed her arms and pushed her.  (Doc. 16, Ex. 2 at 82-83, Doc. 18, Ex. A).  Because the incident occurred in a patient's bathroom, there were no eyewitnesses to the incident.  (Doc. 16, Ex. 8 at ¶ 5).  On Saturday, May 16, 2015, Miller reported the incident to her employer by submitting a variance/concern report.  *Id.* at Ex. 7.  On Monday, May 18, 2015, Mullins had the day off work and went to the Saginaw County Sheriff's Department and filed a

police report against Logan.[1]  *Id.* at Ex. 6.  According to the Sheriff's report, there was no visible injury.  *Id.* at Ex. 6 at 3.  The next day, Tuesday, May 19, 2015, Logan presented a doctor's note to her employer stating that she was to be placed off work for six weeks because of anxiety and stress. (Doc. 18, Ex. B).  Healthsource approved her request for FMLA leave from May 19, 2015 through June 29, 2015.  *Id.* at Ex. C.

While she was on medical leave, Mullins alleges that Healthsource allegedly did nothing to address the situation regarding the alleged assault by Logan.  (Doc. 16, Ex. 2 at 123-125).  On June 1, 2015, Healthsource's Human Resources Director, Krystal Tebedo, telephoned Mullins, who was off on medical leave and thus, could not be interviewed in person, at her home to discuss the alleged incident.  *Id.* at Ex. 8 at ¶¶ 3-4.  Tebedo  told Mullins to fill out another form regarding the incident, this one framed as a discrimination/harassment/ disruptive complaint form.  *Id.* at Ex. 2 at 110. Frustrated and perceiving that no action had been taken regarding the incident, on June 3, 2015, Mullins informed Tebedo in person of her intent to retire effective as of June 30, 2015.  *Id.* at Ex. 2 at 98.  When she tendered her notice of intent to retire, just a little over two weeks had

---

[1]After the Sheriff's Department completed its investigation, the prosecutor's office declined to issue a warrant and no charges were brought against Logan.

passed since the alleged assault.   At the same time that she tendered her notice of intent to retire effective June 30, 2015, Mullins submitted the required discrimination/harassment/disruptive complaint form.  *Id.* at Ex. 8 at ¶ 11.  According to Tebedo's affidavit, during her discussion with Mullins on June 3, 2015, she explained to Mullins that depending on the results of their investigation, consequences for Logan could run the gamut from simple retraining up to and including termination.  *Id.* at Ex. 8 at ¶ 13. Mullins was paid for the remainder of May and June, 2015.  *Id.* at Ex. 2 at 98.

As part of Healthsource's investigation of the May 15, 2015 incident, Tebedo met with Logan who denied grabbing Mullins but admitted she may have touched her on the arm.  *Id.* at Ex. 8 at ¶ 8.  Tebedo also discussed the incident with Detective Benicki with the Saginaw Sheriff's Department on June 10, 2015, who informed her that the prosecuting attorney denied authorization of any criminal charges based on the claims made by Mullins against Logan.  *Id.* at Ex. 8 at ¶ 16.

On April 7, 2016, Mullins filed her five-count Complaint in this case. The first three counts are against Healthcare as the employer and the last two counts are against Logan individually.  Count I alleges Healthsource retaliated against her for taking FMLA leave by asserting that she was

- 4 -

allegedly constructively discharged.  Count II alleges age discrimination in violation of the Michigan Elliott-Larsen Civil Rights Act.  Count III alleges wrongful discharge in violation of Michigan Public Policy.  Count IV alleges assault and battery.  Count V alleges false imprisonment.  Defendants seek summary judgment on all claims.

## II. Standard of Law

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).  The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice.  The procedure is not a disfavored procedural shortcut.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party

must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party.  *Anderson*,

477 U.S. at 248, 252.  Rather, there must be evidence on which a jury

could reasonably find for the non-movant.  *McLean*, 224 F.3d at 800 (*citing*

*Anderson*, 477 U.S. at 252).

### III. Analysis

**A.    FMLA Retaliation Standard of Law**

The court first analyzes Mullins' FMLA retaliation claim against

Healthsource, the only federal claim pending before the court.  The FMLA

prohibits retaliation and provides that it shall be unlawful for an employer to

"discharge or in any other manner discriminate against any individual for

opposing any practice made unlawful by [the FMLA]."  29 U.S.C. §

2615(a)(2).  The regulations further provide that an employer is prohibited

from discriminating against employees who have used FMLA leave, and

"employers cannot use the taking of FMLA leave as a negative factor in

employment actions."  29 C.F.R. § 825.220(c).  The FMLA requires an

employer to reinstate an employee who has taken FMLA leave to her prior

position or to an equivalent position upon her return.  29 U.S.C. §

2614(a)(1).  A claim of FMLA retaliation may be proven by direct or indirect

evidence.  *Demyanovich v. Cadon Plating & Coatings*, 747 F.3d 419, 432

(6th Cir. 2014).  In this case, Mullins proceeds under the indirect or

circumstantial approach pursuant to the familiar *McDonnell Douglas* burden

shifting framework.

Under that approach, in order to prove FMLA retaliation, plaintiff must show that (1) she availed herself of a protected right under the FMLA, (2) her employer knew she was exercising her rights under the FMLA, (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to her, and (4) there is a causal connection between the protected FMLA activity and the adverse employment action. *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012). If these requirements are met, the burden shifts to the defendant to rebut the inference of unlawful discrimination by offering a legitimate, non-discriminatory reason for the action. If the defendant does so, the burden shifts back to the plaintiff to show that the defendant's stated reason is pretext for unlawful discrimination. *Donald*, 667 F.3d at 761-62.

Under the law as summarized above, Healthsource is entitled to summary judgment because Mullins has failed to establish the third and fourth prongs of her prima facie case. Mullins has failed to show that (1) Healthsource took an adverse employment action against her, or (2) that there is any causal connection between the exercise of her protected rights and any alleged adverse employment action. The court analyzes the two prongs below.

- 8 -

**B.    Adverse Employment Action**

Mullins has failed to show the existence of any adverse employment action for two reasons.  First, Healthsource did not take any retaliatory action against Mullins for taking approved medical leave.  Mullins never sought to return to work, thus, Healthsource was under no obligation to place her in her former or an equivalent position.  In fact, Mullins testified that Healthsource never threatened to let her go or to take any disciplinary action against her.  (Doc. 16, Ex. 2 at 106).  Her decision to retire in June, 2015 was consistent with her stated intention to do so during her performance evaluation in 2011.  (Doc. 16, Ex. 4).  She informed Healthcare of her intention to retire on June 3, 2015, while on medical leave which was authorized by her employer from May 19, 2015 to June 29, 2015.  (Doc. 16, Ex. 2 at 98, Doc. 18, Ex. C).  Mullins has not demonstrated that Healthsource retaliated against her because she took FMLA authorized leave.

Second, the court turns to Mullins' "constructive discharge" theory. Perhaps recognizing that Healthsource did not make any overt adverse employment decisions in contravention of the FMLA, Mullins seeks to recover for her personal decision to retire under the theory of "constructive discharge."  Mullins' argument that her personal decision to retire should be

construed as an adverse employment action must be rejected.  Mullins

claims Healthsource created a hostile work environment when it failed to

investigate her complaints about Logan to her satisfaction which forced her

to retire.  But Mullins cannot show constructive discharge under the existing

law.  In *Saroli v. Automation & Modular Components, Inc.*, 405 F.3d 446,

451 (6th Cir. 2005), the Sixth Circuit reiterated the meaning of the term

"constructive discharge" in the FMLA context:

> To demonstrate a constructive discharge, Plaintiff must adduce
> evidence to show that 1) the employer ... deliberately create[d]
> intolerable working conditions, as perceived by a reasonable
> person, and 2) the employer did so with the intention of forcing
> the employee to quit.... To determine if there is a constructive
> discharge, both the employer's intent and the employee's
> objective feelings must be examined.

*Id.* at 451 (quoting *Logan v. Denny's, Inc.*, 259 F.3d 558, 568–69 (6th Cir.

2001)). Here, there is simply no evidence that Healthsource intended to

force Mullins to retire.  In addition, in analyzing whether the first prong of

the constructive discharge inquiry has been met, such that a reasonable

person would have felt compelled to resign, the Sixth Circuit has adopted

the following non-exhaustive list of factors for the court's consideration,

including whether the employee has been subjected to:

> (1) demotion; (2) reduction in salary; (3) reduction in job
> responsibilities; (4) reassignment to menial or degrading work;
> (5) reassignment to work under a [male] supervisor; (6)

> badgering, harassment, or humiliation by the employer
> calculated to encourage the employee's resignation; or (7)
> offers of early retirement or continued employment on terms
> less favorable than the employee's former status.

*Id.* (quoting *Logan,* 259 F.3d at 569).  None of these factors support the

inference that a reasonable person in Mullins' shoes would have felt

compelled to resign.  It is undisputed that she was not demoted, did not

suffer a reduction in salary, did not suffer a reduction in job responsibilities,

was not reassigned to menial or degrading work, was not badgered,

harassed or humiliated by her employer, and was not offered early

retirement or continued employment on less favorable terms that her

former status.

Mullins informed Healthsource of her intention to retire about two

weeks after the alleged incident with Logan, on the same day that she

submitted the discrimination/harassment/disruptive complaint form outlining

her grievance against Logan.  (Doc. 16, Ex. 8 at ¶¶ 10-11).  Mullins

complains that Healthsource had not adequately investigated her grievance

at the time she retired, thus her working conditions were intolerable.  But

Mullins had not been in the workplace since the incident and thus, was not

in a position to gauge how her employer might have protected her from any

perceived threat posed by Logan.  Also, Healthsource did undertake an

investigation: Tebedo met with Logan and discussed the matter with her as well as with Detective Benecki.  (Doc. 16, Ex. 8 at ¶¶ 7,16).  Because there were no eye witnesses to the incident, and no visible injuries resulted, there was little else her employer could have done to investigate the matter. Because Mullins tendered her retirement notice on the same day she submitted her discrimination/harassment/disruptive complaint form, Mullins could not have known how her employer would have resolved her grievance.  A reasonable person would not have felt compelled to retire at that point.  Just over two weeks had passed since the alleged assault and Healthsource was in the process of conducting an investigation.   Under these circumstances, Mullins has failed to show that her working conditions, should she have returned from medical leave, would have been so intolerable as to amount to a "constructive discharge."

## C.    Causal Link

Finally, even if Mullins could prove constructive discharge, she cannot prove any causal connection between her decision to retire and her conduct in taking approved FMLA leave.  Mullins has presented no evidence to suggest a causal link exists between Healthsource's allegedly unsatisfactory response to her complaint of assault against Logan and her FMLA leave.  Mullins testified at her deposition that Tebedo told her that it

- 12 -

could not take action against Logan because it could not risk any unfavorable publicity.  (Doc. 16, Ex. 2 at 110).  Tebedo denies making that remark.  (Doc. 16, Ex. 8 at ¶18).  Even accepting Mullins' own disputed version of events as true, Healthsource's decision not to discipline Logan was based on her employer's concerns for its reputation in the community, not based on any discriminatory animus because she had taken authorized medical leave.  Mullins complains that Healthsource's response to her complaint against Logan was so unacceptable that she was forced to retire, but she has presented no evidence to suggest that her use of FMLA leave played any part in her employer's performance of its investigation into her complaints.  In sum, summary judgment on the FMLA retaliation claim shall enter because nothing suggests that Healthsource intended to force Logan to retire because she had taken FMLA leave.

## IV. Conclusion

For the reasons set forth above, defendant Healthsource's motion for summary judgment (Doc. 16) is GRANTED as to plaintiff's FMLA claim pled in Count I.  Although this court has supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367, because the court has dismissed all claims over which it has original jurisdiction, plaintiff's state law claims of age discrimination, wrongful discharge in violation of public

policy, assault and battery, and false imprisonment are DISMISSED without

prejudice pursuant to 28 U.S.C. § 1367(c)(3).  *See Experimental Holdings,*

*Inc. v. Farris*, 503 F.3d 514, 521-22 (6th Cir. 2007).

**IT IS SO ORDERED.**

Dated:  July 18, 2017

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
July 18, 2017, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk